WARREN v. STATE.

4998                                        340 S. W. 2d 400

Opinion delivered November 28, 1960.

*Richard W. Hobbs,* for appellant.

*Bruce Bennett,* Atty. General, by *John T. Haskins,* Asst. Atty. General, for appellee.

JIM JOHNSON, Associate Justice. This is a criminal case. The action originated with the filing of an information against the appellant H. C. (Dusty) Warren in Garland County charging him with the crime of violating Amendment No. 10 of the Constitution of Arkansas. The information alleged that the appellant in his capacity as county judge did in and during the fiscal year of 1959, in violation of Amendment No. 10, make or authorize contracts and/or make allowances of claims in excess of the revenue from all sources for the said fiscal year in which the said contracts and/or allowances were made and that he did sign or issue script, warrants and/ or make allowances in excess of the revenue from all sources for the fiscal year of 1959. A warrant was duly issued, the appellant was arrested, and allowed to make bond. The case was set for trial on June 20, 1960, and the appellant at that time entered a plea of not guilty to the charge. Trial was had before a jury which returned a verdict of guilty and assessed punishment at a fine of $500 with a recommendation that the fine be suspended.

Formal judgment and sentencing took place on June 24, 1960, and the trial court followed the recommendation of the jury and assessed a fine of $500 and suspended the fine but did formally remove the appellant from his office as county judge in accordance with the provisions of Amendment 10.

A motion in arrest of judgment was filed on June 24, 1960, and the same was overruled on that date. A motion for new trial was then filed; the court overruled that motion and granted an appeal to this Court.

Since this case arises out of an alleged violation of Arkansas Constitution, Article 12, Section 4, which was amended to its present form by Amendment 10, passed in 1924, we here set out the pertinent part of this Amendment as follows:

". . . The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any script, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year; . . .

"Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties, cities, and incorporated towns may issue interest-bearing certificates of indebtedness or bonds with interest coupons for the payment of which a county or city tax in addition to that now authorized, not exceeding three mills, may be levied for the time as provided by law until such indebtedness is paid.

"Where the annual report of any city or county in the State of Arkansas shows that script, warrants or other certificates of indebtedness had been issued in excess of the total revenue for that year, the officer or officers of the county or city or incorporated town who authorized, signed or issued such script, warrants or other certificates of indebtedness shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined in any sum not less than five hundred dollars nor more than ten thousand dollars, and shall be removed from office."

The evidence reveals that soon after appellant took office as County Judge of Garland County in January 1959, he purchased $80,000 worth of road machinery from Paul Goodwin and entered into a sales contract for the payments to be made over a two-year period. Regarding this purchase, appellant testified as follows:

"When I assumed office as county judge the road department had been closed down since the first of December until January 1. This was a cold spell and lots of

ice and snow. When I took office, it cost the county better than $4,000.00 to get the machinery started and took us about a month. In my opinion the county needed additional equipment because the county had progressed, there being new subdivisions and new roads and the demands of the people and to give the people service, I thought that they needed, I felt we needed more and better machinery.

"The county didn't have enough money then to purchase new equipment and the only way we could do it was to buy it on installments. New graders cost $23,000.00 each; we had seven graders and some of those we couldn't ever use so the only way I could work it out was on installments to be paid out of the state turnback. I entered into a contract for the purchase of some used equipment and some new equipment and the agreement was that the county couldn't pay cash and the payment would have to be made out of the state turnback and I authorized payments out of the county road fund and the warrants that were paid were paid out of the county road fund."

Because of the payments on the contract thus entered into by appellant, auditors with the County Audit Division of the State Comptroller's Office, while checking the Garland County records, found that claims for the payments on this contract were allowed and warrants of the county were written in 1960 which were for expenses incurred in 1959 (purchase of machinery). The amount of these warrants was charged back to the year 1959 thereby causing a deficit or overdraft for that year in the amount of $1,039.57. Odell Moudy, one of the auditors assigned by the Comptroller's Office to audit the books of Garland County, testified relative to their audit as follows:

"I kicked back certain claims which were allowed in 1960 to the year 1959 and these came under the heading of disbursements. The total amount of these claims I kicked back was approximately $20,000.00. I put them back in 1959 based upon what I thought the law was . . .

even though they were allowed in 1960. That is the rule followed in every county in Arkansas by my department. If you took the actual expenditures and disbursements of 1959, approved and allowed during that year, and forgot about 1960 there would be no deficits but $21,000.00 to the good . . .''

Applying the facts in this case to the prohibitions contained in Amendment No. 10, we must proceed on the premise that a portion of this amendment is a penal law and that part constituting a penal law is to be strictly construed. Key 241(1) Statutes, West's Digest.

In speaking of contracts such as appellant here entered into, this Court said in *Cook* v. *Shackleford*, 192 Ark. 44, 90 S. W. 2d 216:

''. . . The only question for us to decide is whether contracts made, or indebtedness created in excess of the revenues from all sources for the years in which the contracts are made, are void.

''Amendment No. 10 has been construed by this Court many times and in the case of *Standfield* v. *Friddle*, 185 Ark. 873, 50 S. W. 2d 237, we said: 'The law may therefore be regarded as definitely settled that any contract entered into or allowance made in excess of the revenues of the year in which the contract was entered into, or the allowance made, is wholly void, and the issuance of any county warrants based thereon, adds nothing to their validity, as the warrants are also void.' ''

Following the rule set out above, the contract for the purchase of machinery entered into by appellant in the case at bar was ''wholly void'' as were the warrants issued for payment on the same.

The provision of Amendment No. 10 relative to contracts made for the payments of amounts in excess of revenues from all sources for the year in which the contracts are made is separate and apart from the penal provisions under which the appellants was prosecuted.

The penal provision under which appellant was convicted refers only to the issuance of script, warrants or

other certificates of indebtedness in excess of the total revenues for the year. The Amendment refers to certificates of indebtedness as being in the nature of interest-bearing bonds. The contract in itself cannot be considered as a certificate of indebtedness. Here it is not shown that appellant issued script, warrants or other certificates of indebtedness in excess of the total revenues for the year 1959, as charged, and it is not shown that the paper be issued in 1960 exceeded the revenues for that year, nor is he charged with issuing excessive paper for 1960. Therefore, following the rule of strict construction and adhering to the prohibition against extending penal provisions to include that which is not by its plain language clearly included [Key 241(1), Statutes, West's Digest, *supra*] we reach the conclusion that the undisputed evidence shows appellant did not violate that part of Amendment No. 10 making it a misdemeanor to issue script, warrants or other certificates of indebtedness in excess of the total revenues for the year in which such paper is issued.

Reversed and dismissed.

HARRIS, C. J., concurs. McFADDIN, J., dissents.